# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| LEA ALLISON, ANTONIO HARRELL, and KATHERINE GUILL, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BRADLEY R. ALLEN, SR., in his official capacity as Chief District Court Judge, <br><br> BRENDA BROWN, KELLY COUNCILMAN, DAVID CRABBE, RHONDA CRISP, BERTRAM HEATHCOTE, WENDY HUNTER, AMELIA KNAUFF, BOBBIE NANCE, HELENA RODGERS, KIMESHA THORPE, JOHN WATTERSON, SUSAN WORTINGER, in their official capacity as magistrates of the Alamance County District Court, <br><br> D. THOMAS LAMBETH, JR., in his official capacity as Senior Resident Superior Court Judge, <br><br> and <br><br> TERRY S. JOHNSON, in his official capacity as Alamance County Sheriff, <br><br> Defendants. | Case No. <br><br> (Class Action) |

## CLASS ACTION COMPLAINT

1.     Every day in Alamance County, presumptively innocent people remain in jail simply because they are too poor to pay for their freedom. Hundreds of people each year are condemned to remain confined in jail for days, weeks, or possibly even months until they either have their day in court or accept a plea that allows them to be released and return to their lives. This system inflicts devastating harm on people solely because of their poverty and violates the most fundamental of American axioms: that all people are equal under law.

2.     Defendants are responsible for these harms, as they implement and employ policies and practices that imprison people on unaffordable money bail, deny them even the most basic procedural protections, and violate their fundamental constitutional rights to pretrial liberty and to not be jailed because of their poverty.

3.     Plaintiffs Lea Allison, Antonio Harrell, and Katherine Guill (collectively, "Named Plaintiffs") are currently confined in Alamance County jail cells solely because they do not have enough money to purchase their freedom. Because they cannot make the payment that Defendants require for their release, these presumptively innocent individuals will be detained in the Alamance County Detention Center until their cases reach a disposition.

4.     Defendants subject people arrested and charged in Alamance County to unconstitutional de facto detention orders set without the assistance of counsel and do not provide any process for the incarcerated individuals to contest their jailing until days or weeks have passed and the individual waives counsel or an attorney enters an appearance

2

and files a bail motion.[1] Conversely, wealthier individuals are released from custody almost immediately because they can pay the monetary condition of release.

5.      Thus, Defendants systematically violate Plaintiffs' rights to equal protection under the law, substantive and procedural due process, and to be represented by counsel.

6.      Defendants' unconstitutional policies and practices result in widespread wealth-based detention. Of the nearly 350 people locked in Alamance County Detention Center, approximately 78 percent are there awaiting trial.[2] Similarly, the Alamance County Sheriff's Office reported that in 2017, the average daily detention center population was 438 people, of which 315, or approximately 71 percent were held pretrial, including those held on federal charges.[3] Many of these people are in pretrial detention solely because they cannot pay the secured money bail that Defendants require for their release.

7.      Pretrial detention not only subjects these individuals to the overcrowded conditions in Alamance County's jail, but it also negatively impacts their personal lives and jeopardizes their legal defense. The consequences of pretrial incarceration are severe: people who are detained pretrial routinely suffer losses in employment, child custody, and housing, and barriers to participation in one's own defense. Critically, people detained

---

[1] The allegations in this Complaint pertain only to people arrested for felony and misdemeanor charges that do not involve domestic violence. Individuals charged with domestic violence offenses receive a different process for bail under state law, which requires that a judge set their conditions of release, so a magistrate does not set conditions of pretrial release for them at the initial appearance. *See* N.C. Gen. Stat. § 15A-534.1.

[2] Data obtained from Alamance County Sheriff's Office Inmate Inquiry, *accessed on* Nov. 8, 2019 at 2:30 p.m.

[3] Data released by Alamance County Sheriff's Office (Aug. 2018).

pretrial experience worse trial and sentencing outcomes than people who are charged with the same offense but are released before trial.[4]

8.     These harms are inflicted on people living in poverty who cannot pay money bail despite compelling evidence that alternatives to monetary release conditions are more effective in ensuring appearance for trial and reduce the risk of re-arrest before trial.[5]

9.     Plaintiffs bring this lawsuit in their individual capacities and as representatives of the class of individuals including all people who are or will be arrested and detained in the Alamance County Detention Center because they are unable to pay a monetary condition of pretrial release, subject to the exception laid out in footnote 1. Each Named Plaintiff has already suffered pretrial incarceration without due process due to Defendants' actions.

10.     On behalf of themselves and all others similarly situated, Named Plaintiffs seek a declaration from the Court that Defendants' policies and practices violate Plaintiffs' equal protection, substantive due process, and procedural due process rights, as well as

---

[4] *See, e.g.*, Paul Heaton, et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 STAN. L. REV. 711, 786-87 (2017).

[5] PRETRIAL JUSTICE INSTITUTE, *The Pretrial Services Agency for the District of Columbia: Lessons From Five Decades of Innovation and Growth* 2 (2018), https://perma.cc/8KAD-TY5H ("The high nonfinancial release rate [in Washington, DC] has been accomplished without sacrificing the safety of the public or the appearance of people in court. Agency data show that 90 percent of released people make all court appearances and that 91 percent complete the pretrial release period without any new arrests."). *See also* CINDY REDCROSS, ET AL., MDRC CENTER FOR CRIMINAL JUSTICE RESEARCH, *Evaluation of Pretrial Justice System Reforms that Use the Public Safety Assessment: Effects in Mecklenburg County, North Carolina* (March 2019) at 28, https://www.mdrc.org/sites/default/files/PSA_Mecklenburg_Brief1.pdf (policy changes that increased the number of people released pretrial had no effect on the number of people who failed to appear in court),.

their right to counsel. Plaintiffs further request that the Court issue appropriate injunctive and declaratory relief that will ensure that individuals in Alamance County do not remain in jail solely because of their poverty.

11.     Plaintiffs further ask that this Court immediately take up their Motion for Temporary Restraining Order and order Defendant Sheriff to release Named Plaintiffs unless Defendants provide him with orders including a finding, made after the required procedural safeguards have been provided, that Named Plaintiffs' pretrial detention is necessary.

## JURISDICTION AND VENUE

12.     This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq.*, and the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

13.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

14.     **Plaintiff Lea Allison** is a 30-year-old white woman. She is currently incarcerated in the Alamance County Detention Center solely because she cannot afford a $3,500 money bail, set by a magistrate.

15.     **Plaintiff Antonio M. Harrell** is a 36-year-old Black man. He has been incarcerated for more than 2 days solely because he cannot afford a $1,500 money bail, set by a magistrate.

16.     **Plaintiff Katherine Guill** is a 42-year-old white woman. She is currently incarcerated in the Alamance County Detention Center solely because she cannot afford a $2,500 money bail, set by a magistrate.

17.     **Defendant Chief District Judge Allen** is responsible under state law for administrative supervision and authority over the operation of the district court and the magistrates in his district. N.C. Gen. Stat. § 7A-146. This supervision includes assigning matters to magistrates, prescribing the times and places at which magistrates are available for the performance of their duties, and designating magistrates to appoint counsel and accept waivers of counsel. *Id.* Chief District Judge Allen also has the authority to suspend magistrate judges and to set a hearing before Senior Resident Superior Court Judge Lambeth to remove a magistrate. N.C. Gen. Stat. § 7A-173. Chief District Judge Allen is authorized to consult with Senior Resident Superior Court Judge Lambeth in setting the county bond policy. N.C. Gen Stat. § 15A-535. Chief District Judge Allen is sued in his official capacity for declaratory relief.

18.     **Defendant Alamance County magistrates**' duties include making probable cause and bail determinations. The magistrates determine conditions of release for people arrested on non-domestic violence charges. When determining conditions of release, magistrates do not provide notice of critical issues at the proceeding, an opportunity to be heard or to confront evidence, findings by any legal or evidentiary standard concerning arrestees' ability to pay money bail or the necessity of pretrial detention, or an explanation

of reasons on the record. They also do not provide counsel before the proceedings or at the proceedings. The magistrates are sued in their official capacity for declaratory relief.

19. **Defendant Senior Resident Superior Court Judge Lambeth** is responsible under state law for promulgating, in consultation with the chief district judge, the bond policy for Superior Court District 15A, in which Alamance County is located. *See* N.C. Gen Stat. § 15A-535. Judge Lambeth has general administrative, rulemaking, and supervisory authority over the superior court district. Judge Lambeth appoints magistrates, fills magistrate vacancies, and may remove magistrates from office after conducting a hearing. N.C. Const. Art. IV § 10; N.C. Gen. Stat. §§ 7A-171(b), (c), and (d); 7A-173(a), (c). Judge Lambeth is sued in his official administrative capacity for injunctive and declaratory relief.

20. **Defendant Sheriff Terry Johnson** is the head of the Alamance County Sheriff's Office and the keeper of the Alamance County Detention Center. Sheriff Johnson has custody of individuals in Alamance County during their booking into the jail and for the duration of their pretrial detention. The Sheriff's Office detains people who have been arrested and cannot pay the secured money bail required by the magistrates. He is the final policymaker for the jail in Alamance County. Sheriff Johnson is sued in his official capacity for injunctive and declaratory relief.

## THE NAMED PLAINTIFFS ARE IN JAIL BECAUSE THEY ARE UNABLE TO PAY THE FINANCIAL CONDITION REQUIRED FOR THEIR RELEASE

21. Plaintiff Lea Allison is a 30-year-old white woman who is currently detained in the Alamance County Detention Center. She would be able to leave the jail if she could afford to pay a $3,500 cash bail.

22. Ms. Allison has a 6-year-old daughter who relies on her support.

23. Ms. Allison is indigent and struggles to pay for basic necessities; she recently lost her cell phone service and her car insurance will lapse because she cannot pay the bill.

24. After five months of unemployment and one month of underemployment, Ms. Allison was finally able secure a job, which she was scheduled to begin the day following her incarceration. Ms. Allison fears she will lose her new job and only path to financial stability for her and her daughter if she remains incarcerated.

25. Ms. Allison lives with her boyfriend and his family because she cannot afford her own place. Ms. Allison worries that she will lose her housing at her boyfriend's mother's house if she is not able to contribute to the rent.

26. Ms. Allison worries that, unless released from jail, she will not have access to the six daily medications she needs to take.

27. At the jail, Ms. Allison is sleeping on the floor of her jail cell, alongside many other women, because her housing unit is overcrowded.

28. Ms. Allison has not been before a magistrate judge. Rather, at the jail, a sheriff's deputy handed her a piece of paper entitled "Conditions of Release and Release

Order" signed by a magistrate. The Order stated that she would have to pay $3,500 secured money bail in order to be released.

29.    Plaintiff Antonio Harrell is a 36-year-old Black man who lives in Burlington, North Carolina.

30.    Mr. Harrell lives in a supportive housing group home for people with disabilities, where he usually speaks with a peer support person daily to manage mental health and substance abuse challenges.

31.    Mr. Harrell relies on a limited social security check, on which his mother is the representative payee. He supplements that fixed income with part-time work busing tables at a local restaurant, Smithfield Chicken and Barbeque, for $7.75 per hour, but still struggles to meet his basic necessities. At the time of filing, Mr. Harrell has only $2.00 to his name, and he is waiting for his next paycheck.

32.    On the morning of Saturday, November 9, 2019, Mr. Harrell was arrested and charged with second degree trespassing and larceny, both of which are misdemeanor charges.

33.    The police officer who arrested Mr. Harrell took him to the Alamance County Detention Center, where he arrived around 12:30 p.m. The police officer told Mr. Harrell that he would see a magistrate. Mr. Harrell asked the police officer if he could ask the magistrate for a written promise to appear, and the police officer told Mr. Harrell that he could.

34. When Mr. Harrell went before the magistrate for an initial appearance, the magistrate was behind glass and the only other person in the room with him was the arresting officer. Mr. Harrell did not have a lawyer during the proceeding before the magistrate, but he would have preferred to have the assistance of an attorney to help him understand what was happening to him.

35. The magistrate told Mr. Harrell his charges and that he would need to pay a $1,500 secured bail in order to be released from jail. Mr. Harrell then asked the magistrate if he could be released on a written promise to appear instead of a money bail, to which the magistrate said, "no."

36. The proceeding before the magistrate only lasted one or two minutes. The magistrate asked Mr. Harrell no questions about how much he could afford to pay, whether he had a job, how much his rent was, or how long he had lived in the area.

37. The magistrate gave Mr. Harrell a piece of paper with a $1,500 money bail amount and a court date for his first appearance in district court. The magistrate did not tell Mr. Harrell the reasons for the $1,500 bond amount, or that there are alternative conditions of release that he could have set other than money bond. The paper said that Mr. Harrell's first appearance in district court is scheduled for December 5, 2019, which is more than 3 weeks from the date of Mr. Harrell's appearance before the magistrate.

38. Mr. Harrell cannot not afford to pay the $1,500 secured money bail required for his release or the cost to hire a private attorney.

39.     Since being booked into the jail, Mr. Harrell has not received the four medications that he takes on a daily basis, and which he has relied on for years and are critical to his health. He also has not been able to speak to his peer support person since entering the jail, which he usually does daily to manage his mental health and substance abuse challenges.

40.     Mr. Harrell waited six months to get into the supporting housing group home where he has lived for the past year. He is extremely worried that if he remains in jail because he cannot make the payment required for his release, he could lose his room at the group home, as well as his job and possibly his social security check.

41.     Plaintiff Katherine Guill is a 42-year-old white woman who is currently detained in the Alamance County Detention Center. She would be able to leave the jail if she could afford to pay a $2,500 cash bail.

42.     Ms. Guill works at a restaurant where she makes $8 per hour plus tips.

43.     She was arrested on November 11, 2019 and charged with several misdemeanor offenses. She was taken to the Alamance County Detention Center where she saw a magistrate. At the proceeding before the magistrate, Ms. Guill was not represented by counsel. The magistrate told Ms. Guill not to speak and that she would get in trouble if she spoke.

44.     At this proceeding, the magistrate did not ask Ms. Guill any questions about her ability to pay or her ties to the community. The magistrate informed Ms. Guill that the

money bail amount she would have to pay for her release was $2,500. Ms. Guill attempted to ask for an attorney but the magistrate would not let her speak.

45.     Ms. Guill cannot afford to pay the secured money bail required for her release. She lives in a sober living facility where she had to wait a month for a bed. She takes medication that she has not been receiving in jail.

46.     If she stays in jail, she is afraid that she will lose her job, her bed in the sober living facility, and that her physical and mental health will deteriorate.

47.     Because her housing unit in the jail is overcrowded, she is sleeping on a thin mat on the floor.

48.     Ms. Guill's first appearance in district court is not until December 10, 2019, which is nearly one month from the date of her arrest.

### DEFENDANTS FAIL TO PROVIDE ANY CONSTITUTIONALLY MEANINGFUL PRETRIAL RELEASE PROCESS AND INDIVIDUALS REMAIN INCARCERATED DUE TO THEIR POVERTY

49.     Defendants, as a matter of practice, impose secured financial conditions of release on almost all people arrested in Alamance County. In 2017, Alamance County judges required a secured bond in 93 percent of felony release orders and 85 percent of misdemeanor release orders, representing 88 percent of all release orders.[6] In 2018, out of 100 North Carolina counties, Alamance County ranked second—nearly the highest rate in

---

[6] Josh Shaffer & David Raynor, *Pay $500 on a panhandling charge or sit in jail for five days. Should NC find a better way?* THE NEWS & OBSERVER (Feb. 21, 2019), https://www.newsobserver.com/news/state/north-carolina/article224673805.html.

12

the state—in terms of the percentage of misdemeanor defendants with secured money bond.[7]

50.    Alamance County has a written policy, published in 1995, that provides recommended bail guidelines. Ex. A, Judicial District 15A Official Policies on Pretrial Release. Pursuant to state law, this policy is promulgated by the senior resident superior court judge, in consultation with the chief district court judge. The policy was issued in 1995 by the then-senior resident superior court judge, and neither Senior Resident Lambeth nor any other senior resident superior court judge has updated the policy since then.

51.    Although the written policy states that state law is designed to impose the least restrictive non-monetary form of release that will reasonably assure court appearance, *see* Ex. A, Official Policies at 4, the policy does not establish a procedure that is sufficient to protect arrestees' constitutional rights. The policy does not require any affirmative inquiry or findings regarding ability to pay. *Id.* at 6. While the policy lists "Defendant's financial resources" as a factor that judicial officials must consider when setting bail, a judicial official need only consider that fact insofar as that information is available to them. *Id.* at 3. The policy also requires magistrates to impose secured money bail absent extraordinary circumstances in many cases. For example, magistrates must set secured money bail in felony cases "unless the magistrate has personal knowledge of outside confirmation of a sufficient number of favorable circumstances . . . to justify another form

---

[7] Jessica Smith, *How Big a Role Does Money Play in North Carolina's Bail System*, UNC School of Government (July 2019), *available at* https://nccriminallaw.sog.unc.edu/how-big-a-role-does-money-play-in-north-carolinas-bail-system/.

of release." *Id.* at 6. The policy also requires "extraordinary circumstances" for setting any condition other than secured money bail in a number of other cases, including where the individual has been convicted of multiple larceny or shoplifting offenses or has possessed professional larceny equipment. *Id.* The policy does not outline the procedures that must be followed to determine the amount of secured money bail that an individual can pay, or the procedures to follow if the magistrate requires unaffordable secured money bail, nor does it require access to appointed counsel during bail setting.

52.     With some exceptions, such as individuals who are arrested for domestic violence charges and thus must have their conditions of pretrial release set by a judge, *see* N.C. Gen. Stat. § 15A-534.1(a), people who are arrested in Alamance County have their conditions of release determined by magistrates.

53.     Within a few hours of arrest, individuals are brought before a magistrate in the jail for an initial appearance. The initial appearance is a very brief proceeding at which the magistrate informs the person of the charges against them, their conditions of release, and their next court date. Individuals are not represented by counsel at this proceeding.

54.     Magistrates set conditions of release without making any inquiry into the individuals' ability to pay secured money bail, their ties to the community, or other relevant factors. Despite not knowing an individual's financial circumstances, the magistrates have a practice of setting monetary conditions of release in the vast majority of cases. The magistrates sometimes determine the conditions of release without even seeing the individual. Individuals sometimes receive a preprinted form with the secured money bail

14

amount already printed on it. Even when the magistrates set bail after the person is brought before them, they do so without asking any relevant questions of the individual. Magistrates thus set money bail without any knowledge of the individual circumstances of the arrested person, other than the charges on which the person has been booked and, sometimes, prior convictions, the contents of the police report, and/or cooperation with law enforcement.

55.     For many people, these money bail orders operate as *de facto* detention orders because they cannot obtain the amount of money required for their release.

56.     Magistrates routinely issue these *de facto* detention orders without any individualized assessment of the risk a person may pose, and without considering non-monetary conditions that might sufficiently mitigate such risks. Furthermore, the magistrates issue these *de facto* detention orders without any meaningful process, let alone the detailed procedures required by due process, including: notice of the critical issues to be decided; the assistance of counsel; the right to present evidence and confront evidence offered by the government; the requirement that any findings be made by clear and convincing evidence; and an on-the-record statement of reasons for any decision to detain.

57.     Once a financial condition of release is imposed by the magistrates at the initial appearance, those who can pay will be released immediately while those who cannot access the money required for release remain jailed for days, weeks, or possibly even a month or longer before they have any opportunity to request alternative conditions of release.

58.     After the initial appearance before a magistrate, individuals have a first appearance before a district court judge. This appearance is the first opportunity to request and receive court-appointed counsel for individuals who cannot afford to hire an attorney. For individuals without counsel who remain jailed because they cannot afford to pay money bail, there is no mechanism to request review of conditions of release until after the judge appoints counsel, or they waive their right to counsel, at their first appearances.

59.     Individuals charged with felony offenses are entitled under state law to a first appearance within 96 hours of arrest. N.C. Gen. Stat. § 15A-601(c). Individuals charged only with misdemeanor offenses, however, are not entitled to a first appearance within 96 hours of arrest and often must wait significantly longer before they see a judge. Typically, magistrates schedule first appearances in cases involving only misdemeanors for the next date on which the arresting officer is scheduled to be in court. This means that individuals charged with misdemeanors who cannot afford to pay money bail can be jailed for days, weeks, and possibly a month or more, before they see a judge, are appointed counsel, or have an opportunity to request alternative conditions of release.

60.     Defendants do not provide an opportunity to request bail review at the first appearance. The district court judges at first appearances refuse to hear requests from arrestees to change the conditions of pretrial release. Individuals are not represented by counsel and are not permitted to speak to the judge except to inform the judge whether they plan to retain counsel or would like appointed counsel, and to answer any questions from

the judge about the affidavit of indigency used to determine eligibility for appointed counsel.

61. At the first appearance, the district court judge informs individuals of the maximum sentence possible for each charge, informs them of their right to counsel, and asks whether they would like to have counsel appointed to them. Before appointing counsel, the judge reviews the individual's affidavit of indigency and has them attest to their indigency under oath. Arrestees are also informed that court-appointed attorneys are not necessarily free and that they will have to pay their appointed counsel $55 an hour for misdemeanor cases and $60-65 an hour for felony cases, plus an additional $60 "appointment fee" if their cases result in conviction. Even when the judge learns through the appointment-of-counsel process that the individual before them is indigent, the judge does not address conditions of release. This first appearance proceeding typically lasts no more than a few minutes and is not on the record.

62. Prosecutors from the Alamance County District Attorney's Office are present at first appearances. They read the allegations against arrestees and calendar cases. Defense counsel are not present at first appearances unless the arrestee has retained private counsel.

63. If individuals attempt to request a change to their conditions of release, the judge informs them that the first appearance is not the appropriate time to talk about their pretrial release conditions, and that if they would like to challenge their pretrial release conditions, they should wait for their attorney to contact them and then request that their attorney file a motion for review of their pretrial release conditions.

17

64.     Alamance County does not have a public defender office. Individuals who are entitled to a court-appointed attorney are assigned counsel from a list of eligible private attorneys that is maintained by the clerk of court pursuant to the County's "Approved Non-Public Defender County Plan."

65.     After an individual has had a first appearance and the judge has appointed counsel, the clerk of court notifies defense counsel of the appointment. Appointed counsel must then go to the courthouse to obtain a copy of their client's case file. The appointment form includes a box that is checked if the client is in custody. If the box is checked, appointed counsel are supposed to visit their client in the jail within 72 hours. Unless individuals have waived their right to counsel, that meeting is their first opportunity to ask their attorney to file a motion for bond reduction.

66.     It is the policy and practice in Alamance County that defendants must give prosecutors at least 24 hours' notice before judges will hear a motion for bond reduction.

67.     Indigent individuals who seek court-appointed counsel therefore have no opportunity to challenge or request modification of their release conditions until counsel is appointed in their cases at first appearance, makes contact with them, agrees to request a modification of pretrial release conditions, and then enters an appearance in their case and files a bail motion. Even after a bond motion is filed, the district court judges will not hear the motion for at least a day after it is filed because of the 24-hour-notice policy. Thus, indigent individuals charged with felonies remain incarcerated for a minimum of several days and often more than a week before they are given any opportunity to modify the

18

conditions of release set in their case. Indigent individuals charged with misdemeanors may remain incarcerated for weeks before they have their first appearance and even longer before they meet their appointed counsel and have an opportunity to seek modification of their conditions of release.

68.     Conversely, wealthier individuals can, immediately after their initial appearance before a magistrate, pay the required secured money bail or hire an attorney to quickly challenge their release conditions.

69.     As a result of Defendants' policies and practices, indigent individuals are subject to extended periods of wealth-based pretrial detention before being provided a hearing on conditions of release.

## ALAMANCE COUNTY'S UNCONSTITUTIONAL PRETRIAL POLICIES AND PRACTICES HARM INDIVIDUALS AND COMMUNITIES

70.     Due to Defendants' unconstitutional policies and practices, presumptively innocent individuals are detained in Alamance County every day solely because they are too poor to pay the monetary release conditions imposed without any hearing, let alone a hearing that meets constitutional standards.

71.     Pretrial incarceration harms individuals' lives far beyond their loss of liberty and the conditions they face in jails. Collateral consequences of pretrial incarceration include:

- Loss of income and wages when individuals lose their jobs because of their incarceration;
- Loss of housing and missed payments on bills because individuals cannot work or pay bills while incarcerated;
- Loss of physical and/or legal custody of children;

- An increase of mental illness symptoms because conditions in jail can put an individual under extreme stress and restrict access to needed medications, exacerbating or even causing mental illness; and
- Increased risk of assault, including sexual assault, especially in the first few days of incarceration.

72.     In addition, being detained pretrial can have a significant impact on the legal outcome of a person's case. Detained people have a harder time preparing for their defense, gathering evidence and witnesses, and meeting with their lawyers. Being detained pretrial decreases a person's plea bargaining power and increases the likelihood of a plea to time served, even if the person is innocent. Those detained pretrial face worse outcomes at trial and sentencing than those released pretrial, even when charged with the same offenses. Individuals incarcerated pretrial have a 13 percent increased chance of being found guilty, have a 25 percent increased chance they will plead guilty, are four times more likely to be sentenced to jail time, and have three times longer jail sentences (an average of 4.6 months longer) than those free while waiting for their trial.[8]

73.     A large body of empirical evidence shows that many people who are initially jailed for just two or three days after arrest and then released are much more likely than

---

[8] *See* CHRISTOPHER LOWENKAMP ET AL., INVESTIGATING THE IMPACT OF PRETRIAL DETENTION ON SENTENCING OUTCOMES, LAURA & JOHN ARNOLD FOUNDATION 12, 14 (2013), https://university.pretrial.org/viewdocument/investigating-the-im (finding that "defendants detained for the entire pretrial period were 4.44 times more likely to be sentenced to jail" than those released pretrial, and that defendants detained pretrial faced 2.78 times longer jail sentences); Megan T. Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes*, 34 J.L. ECON. & ORG. 18 (2018), https://www.econ.pitt.edu/sites/default/files/Stevenson.jmp2016.pdf (finding that individuals jailed pretrial are 13 percent more likely to be convicted); Paul Heaton, et al., 69 STAN. L. REV. at 744.

similarly-situated people who are not detained pretrial to be re-arrested, and they are also more likely to miss court dates in the future, all because of the destabilizing effects of short periods in jail.[9]

74.     Thus, Defendants' practice of issuing *de facto* detention orders by setting unaffordable monetary bail without process or requisite findings results in significant collateral consequences to individuals based solely on their economic status.

75.     Conditions within the jail additionally put arrestees' health and safety at risk. The jail is overcrowded and the housing units often have so many individuals housed in them that it leaves many to sleep on the floor. This crowding can result in unsanitary and dangerous conditions.

### Class Action Allegations

76.     The Named Plaintiffs bring the Claims in this action, on behalf of themselves and all others similarly situated, as a class action under Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(2).

77.     Under Federal Rule of Civil Procedure 23(a), certification of a class is appropriate where: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

---

[9] *See, e.g.*, Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization*, 21-23 (2016), http://www.columbia.edu/~cjh2182/GuptaHansmanFrenchman.pdf

representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

78.     Plaintiffs request that the Court certify a class composed of all people who are arrested and charged with non-domestic violence offenses who are or will be detained in the Alamance County Detention Center because they are unable to pay monetary conditions of pretrial release.

## Numerosity and Impracticability of Joinder

79.     Joinder of the proposed class is impracticable because of the numerosity of the class and their impoverished economic status.

80.     Of the nearly 350 individuals locked in Alamance County Detention Center, approximately 78 percent are in pretrial custody.[10] Similarly, the Alamance County Sheriff's Office reported that in 2017 the average daily detention center population was 438 people, of which 315, or approximately 71 percent were held pretrial, including those held on federal charges.[11] The vast majority of individuals who are incarcerated pretrial in Alamance County are impoverished. The number of current and future individuals subject to Defendants' policies and practices who will remain incarcerated numbers well into the hundreds every year.

---

[10] *Supra* note 2.
[11] *Supra* note 3.

## **Commonality**

81.     Common questions of law and fact exist as to all members of the class. The Named Plaintiffs seek common declaratory and injunctive relief concerning whether Defendants' wealth-based policies and practices violate the rights of the class members, and relief mandating that the Defendants cease these constitutional violations.

82.     The Plaintiffs' claims raise common legal and factual questions arising from one central set of policies and practices: Defendants' post-arrest procedurally-deficient bail setting and wealth-based detention system. Defendants operate this system in materially the same manner every day with respect to all individuals arrested and held in Alamance County's pretrial custody. Resolution of these legal and factual issues will determine whether all of the members of the class are entitled to the constitutional relief that they seek.

83.     Among the most important common questions of fact for the class are:

a.   Whether Defendants have a policy and practice of setting pretrial release conditions without process or a hearing;

b.   Whether, when, and how any official determines what conditions of pretrial release should be and whether, for example, any judicial official considers ability to pay, makes findings concerning ability to pay, and offers non-monetary release conditions for those unable to pay;

c.   What standard post-arrest procedures created, implemented, and enforced by the Defendants apply to people booked in the Alamance County jail;

d.   How long individuals booked in the Alamance County jail must wait in detention before they have an opportunity to challenge pretrial release conditions, raise their inability to pay for their release, or request alternative, non-monetary conditions;

23

e.  How long individuals arrested must wait to be appointed an attorney who may challenge their pretrial detention;

f.  The role of the magistrates in the setting of bail and conditions of release, whether any individualized analysis occurs, and whether and how inability to pay is considered;

g.  Any supervision or training given to magistrates and used to help determine release conditions.

84.  Among the most important common questions of law are:

a.  Whether requiring an individual to pay money to secure release from pretrial detention without an inquiry into or findings concerning the individual's present ability to pay the amount required, the need for detention, and less restrictive alternative release conditions, violates the Fourteenth Amendment's Due Process and Equal Protection clauses;

b.  Whether imposing a monetary release condition that operates as a *de facto* order of pretrial detention because of a person's inability to pay without making substantive findings, or complying with the legal standards and procedures required for issuing and enforcing a *de facto* order of preventive detention, violates the class members' substantive and procedural due process rights;

c.  Whether the setting of pretrial release conditions without an individual's ability to consult and be represented by counsel violates the Fourteenth Amendment's Due Process clause; and

d.  Whether the bail hearing before the magistrate is a critical stage of the criminal case, such that class members are entitled to a state-provided attorney under the Sixth Amendment.

## **Typicality**

85.  The Named Plaintiffs' claims are typical of the claims of the other members of the class. Each class member is or will be incarcerated in Alamance County custody pretrial and remains incarcerated based on the same lack of due process, suffering the same injury because Defendants refuse to comply with basic due process constitutional

24

requirements. Class members all remain confined in jail because they cannot afford to pay the Defendants' secured money bail. The answer to whether the Defendants' policies and practices are unconstitutional will determine the specific claims and specific relief sought by the Named Plaintiffs and every other class member. All class members seek the same declaratory and injunctive relief.

**Adequacy**

86.     The Named Plaintiffs are adequate representatives of the class because their interests in the vindication of their legal claims are entirely aligned with the interests of the other class members, each of whom has the same basic constitutional claims. The Named Plaintiffs are members of the class, and their interests do not conflict with those of the other class members.

87.     There are no known conflicts of interest among members of the proposed class. All of the members of the class have a similar interest in vindicating their constitutional rights in the face of Defendants' pay-for-freedom and no-process post-arrest detention system.

88.     Plaintiffs are represented by attorneys from the American Civil Liberties Union of North Carolina Legal Foundation, Civil Rights Corps, and the American Civil Liberties Union Foundation. Plaintiffs' counsel have experience litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendants' unconstitutional actions and the relevant law. Counsels' relevant qualifications are more

fully set forth in the contemporaneously filed Motion for Class Certification and its accompanying memorandum and exhibits.

89. The combined efforts of class counsel have so far included extensive investigation into money bail schemes and pretrial release condition processes over the last year, including interviews with individuals in pretrial detention in Alamance County's jail, conversations with attorneys practicing in state courts throughout the region, community members, statewide experts in the functioning of state and local courts, empirical researchers, and consultation with national experts in constitutional law, post-arrest procedure, law enforcement, judicial procedures, criminal law, pretrial services, and jails.

90. Counsel have devoted significant time and resources to becoming knowledgeable about Defendants' unconstitutional pretrial incarceration system and related laws. The interests of the members of the class will be fairly and adequately protected by the Plaintiffs and their attorneys.

## Injunctive or Declaratory Relief – Rule 23(b)(2)

91. Class-action status is appropriate because Defendants, through the policies, practices, and procedures that make up their wealth-based post-arrest detention system, have acted in the same unconstitutional manner with respect to all class members.

92. The class therefore seeks declaratory relief, requesting that this Court find that current policies and practices relating to the conditions of pretrial release in Alamance County violate individuals' rights.

93. The class also seeks injunctive relief to institute a constitutional pretrial system and to prevent Defendant Sheriff from detaining individuals pretrial who cannot afford cash payments and for whom the judges have failed to consider their ability to pay or the availability of less restrictive pretrial release conditions.

94. Because the putative class challenges Defendants' system as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the class, Rule 23(b)(2) is appropriate and necessary.

95. Further, a class action is a superior means, and the only practicable means, by which the Named Plaintiffs and unknown class members can challenge Defendants' unconstitutional actions and obtain the necessary immediate declaratory and injunctive relief sought for themselves and all other members of the class.

## Appointment of Class Counsel – Rule 23(g)

96. Federal Rule of Civil Procedure 23(g) requires that the court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1). Class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

97. For reasons fully set forth in the Memorandum in Support of Motion for Class Certification, undersigned counsel meet the factors the court must consider under Rule 23(g): (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."

## CLAIMS FOR RELIEF

## COUNT I

**Defendants Violate Plaintiffs' Fourteenth Amendment
Rights to Equal Protection and Due Process through a Policy and Practice that
Jails Individuals Based on their Wealth under 42 U.S.C. § 1983**

98.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

99.     Plaintiffs have a right against wealth-based detention. The Fourteenth Amendment's Equal Protection and Due Process Clauses prohibit jailing individuals because of their inability to make a monetary payment.

100.    Because Plaintiffs have a fundamental substantive right to liberty prior to trial, Defendants' wealth-based post-arrest scheme is subject to heightened scrutiny.

101.    Defendants violate Plaintiffs' substantive rights by enforcing against them a system of wealth-based detention that keeps them in jail solely because they cannot afford to make a monetary payment.

102.    Defendants do not inquire into an individual's ability to pay monetary release conditions or consider less restrictive alternatives, nor do they make findings regarding the necessity of detention before requiring unaffordable monetary conditions of release that function as *de facto* detention orders.

103.    Defendants' policies and practices violate the equal protection and due process guarantees of the Fourteenth Amendment because they result in poor arrestees being detained when similarly situated but wealthier arrestees are allowed to go free.

## COUNT II

### Defendants Violate Plaintiffs' Fourteenth Amendment
### Substantive Due Process Right to Liberty under 42 U.S.C. § 1983

104.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

105.  Defendants deny pretrial detainees their fundamental liberty interest in a manner that is not narrowly tailored to serve the state's compelling interests in releasing individuals prior to trial, ensuring that released individuals appear for trial, and protecting the public from danger.

106.  Defendants violate substantive due process by failing to consider any detainee's likelihood to appear or whether that individual poses any danger to the community, and by making no findings regarding the necessity of detention before requiring unaffordable monetary conditions of release that function as *de facto* detention orders through imposition of unaffordable monetary conditions of release.

## COUNT III

### Defendants Violate Plaintiffs' Fourteenth Amendment
### Right to Procedural Due Process
### 42 U.S.C. § 1983

107.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

108.  Before an individual may be detained pretrial, procedural due process requires an individual be given a prompt opportunity to be heard in a meaningful manner before being deprived of liberty.

109. Defendants' total lack of procedures—including: no notice that a proceeding will occur; no notice that the issues at the proceeding will be the individual's ability to pay a money bond and whether the individual arrested is a flight risk or poses a danger to the community; no proceeding with the opportunity to present evidence and cross-examine witnesses; no proceeding at which findings pertaining to these issues are made on the record and by a clear-and-convincing-evidence standard; and no proceeding with counsel present—violates the Fourteenth Amendment.

110. Defendants' failure to provide any process until an individual retains an attorney, combined with the setting of bond amounts unrelated to an individual's ability to pay, denies Plaintiffs' their fundamental right to liberty without procedural due process.

## COUNT IV

**Defendants Violate Plaintiffs' Sixth Amendment Right to Counsel
by Not Providing Them with Counsel for Bail Determinations
42 U.S.C. § 1983**

111. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

112. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel at each post-attachment critical stage of the criminal process. Bail determinations are post-attachment critical stages for which counsel must be provided.

113.    Defendants' failure to provide counsel results in pretrial detention that prejudices both Plaintiffs' immediate liberty interests and the ultimate outcomes of their cases.

114.    Defendants violate the Sixth Amendment by conducting critical bail determinations without providing counsel.

## **Requests for Relief**

WHEREFORE, Plaintiffs and the other class members request this Court issue the following relief:

A. A declaratory judgment that Defendants violate the Named Plaintiffs' and class members' constitutional rights by issuing detention orders without due process;

B. A declaratory judgment that Defendants violate the Named Plaintiffs' and class members' constitutional rights by operating a system of wealth-based detention that keeps them in jail because they cannot afford to pay monetary conditions of release without an inquiry into or findings concerning ability to pay, without consideration of non-financial alternatives, and without findings that a particular release condition—or pretrial detention—is necessary to meet a compelling government interest;

C. A declaratory judgment that when Defendants are determining conditions of release, an individualized determination on release conditions must occur promptly and with the following procedures:

- Defendants must provide notice to the individual arrested that financial information will be collected and must explain the significance of the financial information to be collected;

- Defendants must determine each individual's ability to pay money bail and the amount of money they can afford;

- The individual arrested must be given an opportunity to be heard at the first opportunity concerning their ability to afford money bail and what nonmonetary release conditions, if any, are necessary. The individual must have the opportunity to present evidence, make arguments concerning those

issues, and to contest any evidence or arguments offered by the government concerning those issues;

- The judicial official conducting the hearing must make substantive findings on the record by clear and convincing evidence about why an individual's continued incarceration is warranted and that no less restrictive alternatives to detention address the state's concerns;

- The individual must be provided free counsel at the hearing;

D. A declaratory judgment that Defendants violate Plaintiffs' and class members' right to counsel under the Sixth Amendment by failing to provide counsel to indigent people at an individualized bail determination hearing;

E. An order preliminarily and permanently enjoining the Sheriff from enforcing pretrial detention without written notice that a constitutionally valid process that complies with the above outlined process has been followed in each individual's case;

F. An order requiring Senior Resident Lambeth, in his role as policymaker, to issue a new policy mandating a bail-setting process that meets constitutional requirements;

G. A temporary restraining order requiring the Sheriff to release the Named Plaintiffs unless they are provided the procedures stated above;

H. Any other order and judgment this Court deems necessary to permanently enjoin the Sheriff from enforcing a system of wealth-based pretrial detention that keeps arrestees in jail because they cannot afford a monetary release condition without an inquiry into or findings concerning ability to pay, without consideration of non-financial alternatives, and without any findings that a particular release condition—or pretrial detention—is necessary to meet a compelling government interest;

I. An order certifying the class defined above;

J. An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

K. Any other relief this Court deems just and proper.

Dated:  November 12, 2019                          Respectfully submitted,


/s/  Katherine Hubbard                           /s/ Irena Como
Katherine Hubbard (D.C. Bar 1500503)*            Irena Como (N.C. Bar 51812)
Eric Halperin (D.C. Bar 491199)*                 Leah J. Kang (N.C. Bar 51735)
CIVIL RIGHTS CORPS                               Ann C. Webb (N.C. Bar 44894)
1601 Connecticut Ave NW, Suite 800               AMERICAN CIVIL LIBERTIES UNION OF NORTH
Washington, DC 20009                             CAROLINA LEGAL FOUNDATION
Tel: 202-894-6124                                P.O. Box 28004
Fax: 202-609-8030                                Raleigh, NC 27611
Email: katherine@civilrightscorps.org           Tel: 919-834-3466
      eric@civilrightscorps.org              Email: icomo@acluofnc.org
           lkang@acluofnc.org
           awebb@acluofnc.org


/s/  Twyla Carter
Twyla Carter (WA Bar 39405)*
Brandon Buskey (AL Bar ASB2753-A50B)*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
CRIMINAL LEGAL REFORM PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-284-7364
Email: tcarter@aclu.org
      bbuskey@aclu.org


*Appearing by special appearance in
accordance with Local Rule 83.1(d).


**Attorneys for Plaintiffs**