IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:19-CV-1126

| | |
|---|---|
| KATHERINE GUILL, et al., <br><br> Plaintiffs; <br><br> v. <br><br> BRADLEY R. ALLEN, SR., in his official capacity as chief district judge, et al., <br><br> Defendants. | **DEFENDANT TERRY S. JOHNSON'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (D.E. 106)** |

**NOW COMES** the Defendant, Sheriff Terry S. Johnson, in his official capacity as Sheriff of Alamance County, by and through undersigned Counsel, and respectfully submits this Brief in Opposition to Plaintiffs' Motion for Summary Judgment (D.E. 106).

## NATURE OF THE CASE

Plaintiffs instituted this class action against Defendants Terry S. Johnson and the Judicial Defendants, in their official capacities, on November 12, 2019 (D.E. 1), asserting four (4) claims of relief pursuant to 42 U.S.C. § 1983: violations of their rights under the Fourteenth Amendment to equal protection, substantive due process and procedural due process and violation of their right to counsel under the Sixth Amendment. Plaintiffs are seeking declaratory and injunctive relief, attorney's fees, and costs. Defendant Terry S. Johnson filed his Answer, Response to Plaintiffs' Motion to Certify Class and Response

1

to Plaintiffs' Motion for Preliminary Injunction on February 5, 2020 (D.E. 26, 27, 28). On May 8, 2020, a Consent Order for Preliminary Injunction was issued by the Court (D.E. 56). A Consent Protective Order was entered on June 24, 2021 (D.E. 60). Plaintiff Lea Allison was dropped from the case via an Order issued on August 27, 2021 (D.E. 62) and subsequently, Plaintiff Antonio Harrell was also dropped from this case via Court Order on October 25, 2021 (D.E. 66). A Motion to Enforce Preliminary Injunction was filed by Plaintiffs on October 19, 2021 (D.E. 63), which was denied on December 3, 2021 (D.E. 83). Discovery deadlines were extended in this matter via the Court's Text Order of December 20, 2021, through and including June 8, 2022. Defendant Terry Johnson filed his Notice of Intent to File Dispositive Motions on June 22, 2022 (D.E. 93). Defendant Johnson and Plaintiffs obtained an extension of time, through and including August 1, 2022, within which to file Dispositive Motions. Plaintiffs filed a Motion for Summary Judgment on August 1, 2022 (D.E. 106) along with a memorandum and supporting exhibits (D.E. 107, 107-1 – 107-28). Defendant Terry S. Johnson now files this memorandum in opposition to Plaintiffs' Motion for Summary Judgment.

## STATEMENT OF THE FACTS

Plaintiffs filed this action on November 12, 2019, against numerous judicial officials in Alamance County as well as Sheriff Johnson. Sheriff Johnson is sued in his official capacity as the keeper of the Alamance County Detention Center. Compl. ¶ 20. As the "keeper of the jail," Johnson cares for detainees, secures their custody, and follows the orders of judicial officials with relation to pre-trial and post-trial detention. As of the filing of this lawsuit, judicial officials in Alamance County determined

2

conditions of release for arrested persons pursuant to policies established in 1995. Compl. ¶ 50. Each of the original Plaintiffs in this matter were ordered by a judicial official to be held on a secured bond in the Alamance County Detention Center. Young Affidavit ¶ 7 (D.E. 104-1).

Under the 1995 policy and North Carolina law, Sheriff Johnson lacks any authority to independently establish terms of release. See Compl. ¶ 50, Exhibit A. Sheriff Johnson possesses no discretion when it comes to detaining individuals in the county jail. He is required, by law, to receipt for process, execute process, execute an order or judgment and is the "keeper" of the jail. N.C.G.S. § 162, Article 3. Judicial officials in Alamance County implemented a new bond policy in 2020 and Sheriff Johnson has directed jail staff to comply with the new policy. Young Affidavit ¶ 6 (D.E. 104-1).

The parties entered a consent preliminary injunction in this matter. Under the injunction, Johnson agreed to implement the new policies established by the Alamance County judicial officials, and to provide certain records to Plaintiffs. D.E. 56 ¶ 9. Johnson has fully complied with his obligations under the Order. Young Affidavit ¶ 8 (D.E. 104-1).

## LAW AND ARGUMENT

1. **The Legal Standards of Review**

    **Motion for Summary Judgment**

    Summary Judgment is appropriate when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); United States Dep't of Labor v. N.C. Growers, Ass'n, 377 F.3d 345 (4th Cir. 2004). A

3

material fact is one that may affect the suit under governing law. A genuine issue over a material fact is present when a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The relevant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-252.

In ruling on a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123–24 (4th Cir.1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts demonstrating a genuine issue for trial." Fed.R.Civ.P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324, (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir.1991). "Sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation ... is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir.1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Cmty. Coll. of Baltimore, 354 Fed.Appx. 828, 830 (4th Cir.2009).

In the present case, there are no genuine issues of material fact and the Sheriff is entitled to judgment as a matter of law on each claim for relief.

## 2. The Plaintiffs Blatantly Distort the Evidence

### A. The Relationships of the Defendants

4

Plaintiffs persist in grouping all named Defendants by statements such as, "[t]his class action challenges Defendants' practice of jailing people pretrial…." (D.E. 107 p. 1). In fact, Defendants are separate legal entities with separate bases of authority. The magistrates and judges are judicial officials of the State of North Carolina and derive their authority from Article IV (entitled "Judicial"), Sections 2 and 3 of the North Carolina Constitution and their respective responsibilities from: district court judges, N.C. Gen. Stat. § 7A-146; superior court judges, N.C. Gen Stat. § 15A-535; and magistrates, N.C. Gen. Stat. § 7A-170. While the Plaintiffs do not join him as a party, criminal prosecutions are handled by the elected District Attorney, a state official, whose authority is derived from Article IV, Section 18 of the North Carolina Constitution.

On the other hand, a North Carolina sheriff is neither a state official nor a judicial official. Harter v. Vernon, 101 F.3d 334 (4th Cir.1996). The office of Sheriff is established by a millennium of English and American common law and Article VII (entitled "Local Government"), Section 2 of the North Carolina Constitution. Plaintiffs do not identify any source of authority requiring (or authorizing) a North Carolina sheriff to act as a judicial official, to provide pretrial hearings or provide representation by counsel as these are clearly established responsibilities of the State of North Carolina. N.C. Gen. Stat. § 15A-53; N.C. Gen. Stat. § 7A-498.1. Plaintiffs equally fail to identify any evidence tending to show that Sheriff Johnson has acted as a judicial official or acted in any way other than as required by North Carolina law.

B. The Role of the Sheriff

Plaintiffs claim, "[d]efendant Sheriff Terry Johnson detains people who have been booked into the jail who cannot pay secured bail." D.E. 107 p. 2. This is factually incorrect and is not supported by the Plaintiffs' citation. A North Carolina sheriff, such as Sheriff Johnson, makes no determination regarding any individual's ability to pay secured bail. Sheriff Johnson detains individuals per Order of the State of North Carolina (D.E. 107-3, Johnson Resp. to RFA 3, D.E. 107-3; N.C. Gen. Stat. § 15A-521).

Plaintiffs present no evidence that Sheriff Johnson made detention decisions based on a person's ability to pay secured bail. In fact, Sheriff Johnson testified that he did not have knowledge of a person's ability to pay secured bail. During his deposition, in response to the question, "Are there people who are there because they cannot afford to pay the secured money bail?" Sheriff Johnson testified, "That's not -- I mean, I don't know whether they can or can't, but I'm sure there's people in the detention center that's poorer than other people that may be there; but once again, that is not, you know, something that I'm supposed to worry about. My job is to run the detention center and enforce the laws. The magistrate's job is -- whatever they choose to do, that's not my concern" (D.E. 107-4 p. 63 ln 5-14). Plaintiffs make no allegations and present no evidence that the Detention Center and Sheriff Johnson have an affirmative duty to inquire into a detainee's conditions of release once they are determined by a judicial official.

Further, Plaintiffs claim Sheriff Johnson "is the final policymaker for the jail in Alamance County" (D.E. 107 p. 2). However, Plaintiffs do not identify or cite any jail policies regarding any person's ability to pay secured bail. See D.E. 107. Plaintiffs

6

presumably imply that the decision on which individuals to detain or release is a matter of jail policy within the discretion of the Sheriff. This is factually incorrect. The written order of commitment, as prepared and signed by a judicial official, specifies both the place of confinement and the conditions of release. N.C.G.S. § 15A-521(b). A North Carolina sheriff does not have the authority to detain or release an individual without an order from a judicial official as a matter of North Carolina law - not jail policy.

### C. The Sheriff's Policy Regarding Release from Detention

Plaintiffs state, "magistrates secured bail orders were de facto detention orders. People who paid [the secured bail] were released" (D.E. 107 p. 3). For support, Plaintiffs cite Section 1.B.1. of the Alamance County Sheriff's Office policy manual entitled "Release and Transfer Procedures" (D.E. 107-7, p. 337). This document demonstrates Sheriff Johnson's policy of requiring the submission of a "Release Order" or proof of dismissal of charges from the District Attorney's office. Id. The Release Order is the form known as AOC-CR-200 (Young Affidavit D.E. 104-1, ¶ 5). This form is required by N.C.G.S. § 15A-521 and, as Plaintiffs admit, is prepared by a magistrate - not Sheriff Johnson. See D.E. 107-5, p. 45. Instead of supporting Plaintiffs' claim, the policy provides no support for establishing any unconstitutional official custom, policy, or practice of Sheriff Johnson.

### D. The Role of the Court Liaison

7

Plaintiffs grossly misrepresent the evidence regarding the position of "Court Liaison," currently held by Wayne Barrow. Plaintiffs state, "Alamance County[1] has a dedicated employee, the 'Court Liaison,' who helps cases reach disposition by facilitating guilty pleas in exchange for release. Arrestees who want to plead guilty contact the Court Liaison, and these admissions of guilt are forwarded to prosecutors" (D.E. 107, p. 5). In support of this claim, Plaintiffs attach a portion of the Court Liaison's deposition. Plaintiffs take this testimony out of context and twist the words into something unrecognizable. While the proffered testimony may be some support for Plaintiffs' contentions regarding the coercive effects of pretrial detention, the testimony provides no support for establishing any unconstitutional official custom, policy, or practice of Sheriff Johnson.

First, Mr. Barrow's position is not "dedicated to facilitating guilty pleas in exchange for release." As explained by judicial staff, "Wayne works over at the jail. And detainees are able to contact him to bring things to the attention of the lawyers if they need to or whoever they may need to be brought to the attention of" (D.E. 107-9 p. 260, ll. 8-12). Mr. Barrow's role is to help inmates contact attorneys or others. While this contact may involve guilty pleas, the position is not "dedicated" to facilitating guilty pleas.

---

[1] It is unclear from the context whether Plaintiffs are implying that Mr. Barrow is an employee of Alamance County government. The legal entity known as Alamance County is not a party to this action and sheriff's office employees, like Mr. Barrow, are not county employees. Young v. Bailey, 368 N.C. 665, 669, 781 S.E.2d 277, 280 (2016) ("a sheriff's office is not a program or department of a county ... [and an] employee of a sheriff's office is not a county employee.")

8

As to the cited deposition testimony, in response to Plaintiffs' question, "Do you know of any way for an arrestee to get before the judge on a faster timeline than -- than their next scheduled court date?", Mr. Barrow stated, "their attorney gets with the District Attorney's office and works it out with the District Attorney. That's the only way I know of…. If it's a minor misdemeanor and they had no attorney -- they had chosen to represent themselves -- there have been times when I would assist them in getting back to court to handle their matter" (D.E. 107-11, p. 77, ll. 5-19). It is clear from the context that Mr. Barrow is discussing scheduling earlier court dates when a *pro se* detainee wishes to plead guilty.

Plaintiffs follow up with another question, "And how would you do that?" (D.E. 107-11, p. 77, l. 20). Mr. Barrow seems to understand the question to be asking about scheduling earlier court dates and answers, "They would send me a message saying they want to plead guilty…. If they have been in there six or seven days, they might want to plead guilty in an attempt to get out. Because they know the maximum they could get, if they got the maximum, would be 20 days. So they might send me a message, "I want to take care of my case and plead guilty. Can you get me into court?" And I'll take it from there and I'll try my best to get them in court as soon as possible." (D.E. 107-11, p. 77, l. 21-25; p. 78, ll. 1-11). Once again, Mr. Barrow is stating that his response to the hypothetical situation of a *pro se* detainee who wishes to plead guilty is to "try [his] best" to schedule them an earlier court date. At no point does Mr. Barrow suggest he can grant a detainee release in exchange for pleading guilty.

9

This is made clear by Plaintiff's next question, "And how do you actually get them to court? How do you get them on the calendar?" (D.E. 107-11, p. 78, ll. 12-13). Plaintiffs' question addresses scheduling court cases, as does Mr. Barrow's answer, "I will contact the District Attorney's office and tell them… He's wanting to plead guilty. Can I bring him before the Court?" They will either say yea or nay" (D.E. 107-11, p. 78, ll. 14-20). Mr. Barrow is scheduling court dates for *pro se* detainees who do not know how to navigate the criminal justice system. Mr. Barrow is not negotiating guilty pleas in exchange for release. This should be obvious to the Plaintiffs, because the next question asks, "So it's the District Attorney's decision whether to accept a plea?" (D.E. 107-11, p. 78, l. 21). Mr. Barrow answers "Yes."

The context of the questions establishes that the Plaintiffs began the questioning with an assumption that a hypothetical *pro se* detainee wished to plead guilty to a minor charge. Mr. Barrow's response to this hypothetical situation is that he will contact the District Attorney on behalf of the detainee, but all court dates and plea decisions are at the discretion of the District Attorney's office. Plaintiffs obviously understand this situation because Plaintiffs' Memorandum in Support of Summary Judgment states, "North Carolina law cedes trial scheduling authority to prosecutors[2]…" (D.E. 107, p. 25 (quoting D.E. 107-13)).

---

[2] Prosecutors are employees of the State of North Carolina, not Sheriff Johnson. N.C. Gen. Stat. § 7A-65.

Plaintiffs compound their misrepresentations by listing numerous emails which they claim support their contentions regarding Mr. Barrow's role in negotiating guilty pleas. Even a cursory inspection of these emails reveals that they do not.

- Ex. 14, Paschal Email; This email was sent to Gabriel Diaz. Mr. Diaz is an Assistant District Attorney with the Alamance County District Attorney's Office. Mr. Barrow was copied and responded that he would forward the email to the detainee's attorney.[3]

- Ex. 15, Bane Email; This email was sent to ADA Diaz and copied to Barrow, Kathryn Hayes, and Jennifer Dumont. ADA Diaz then instructs "Katie and Jen" to coordinate with Mr. Barrow regarding a court date "next week." Plaintiffs do not identify "Katie and Jen," although the context shows them to be members of the District Attorney's staff. This email originated on a Thursday afternoon. Presumably ADA Diaz's instruction to contact Mr. Barrow "next week" was a recognition that the next available court date would be in the following week rather than an attempt by the District Attorney's Office to be dilatory.

- Ex. 16, Frazier Email; This email was sent to ADA Diaz and copied to Mr. Barrow. It concerns a probation violation. The email contains no information as to what actions Mr. Barrow took.

---

[3] The email also references an "Assault on a Female" charge without specifying whether this was a domestic violence incident. Per the Plaintiffs' Complaint, "The allegations in this Complaint pertain only to people arrested for felony and misdemeanor charges that do not involve domestic violence" (D.E. 1, fn. 1).

11

- Ex. 17, Pryor Email; This is an email sent to ADA Diaz and copied to Mr. Barrow. ADA Diaz suggests that Mr. Barrow determine a "slow day" and have the "prosecutor" bring Mr. Pryor to court.
- Ex. 18, Lipscomb Email; This is an email sent to Elizabeth Oliveria, the elected Alamance County Clerk of Superior Court Meredith Edwards[4], and Mr. Barrow. The email contains no information as to what actions Mr. Barrow took.
- Ex. 19, Currie Email. This is an email sent to ADA Diaz and copied to Mr. Barrow. The email contains no information as to what actions Mr. Barrow took.

Of the six emails cited, only one contains a response from Mr. Barrow - that Mr. Barrow will contact the detainee's attorney. Two of the six emails contain instructions from the Alamance County District Attorney's Office regarding scheduling a court date. None of the emails show Mr. Barrow "facilitat[ing] a guilty plea in exchange for release."

Plaintiffs cite these emails as proof of the coercive effects of pretrial detention and not as direct proof of unconstitutional acts by Sheriff Johnson's employees. These emails reveal Detention Center staff take detainee emails seriously and respond promptly. They provide no support for establishing any unconstitutional official custom, policy, or practice of Sheriff Johnson.

---

[4] The office of Clerk of Superior Court is a state judicial office. N.C. Gen. Stat. § 7A-101.

Plaintiffs also claim "The creation of Mr. Barrow's Court Liaison position to facilitate the volume of guilty pleas further confirms [the coercive effect of pretrial detention]" (D.E. 107, p. 26). Plaintiffs cite no support for the contention that Mr. Barrow's position was created to facilitate the volume of guilty pleas. According to judicial staff, the court liaison position has existed since at least 1995. (D.E. 107-8, p. 148, l. 7). Plaintiffs cite no evidence as to any volume of guilty pleas in Alamance County.

### E. The Role of Michael Graves

Plaintiffs cite an email from Michael Graves (and subsequent communications between employees of Indigent Defense Services[5]) as proof "Arrestees wishing to plead guilty also contact Michael Graves, a local community activist and member of the Sheriff's advisory board." D.E. 107, p. 5; D.E. 107-21. The Graves email does not support any unconstitutional official custom, policy, or practice of Sheriff Johnson.

The Graves email chain complains about defense counsel inaction resulting in longer pretrial detentions. If the allegations in the email are true, then this email appears to undermine Plaintiffs' assertion that secured bail is the sole cause of lengthy pretrial detention. There is an acknowledgment in the email by D. Tucker Charns, Chief Regional Defender, that the availability of parole officers for testimony in criminal cases also plays a role in extending pretrial detention for some detainees. In North Carolina,

---

[5] Provision of legal counsel to indigent individuals is a state responsibility. N.C. Gen. Stat. § 7A-498. Sheriff Johnson has no ability to establish or abolish a public defender's office. "A legislative act [of the North Carolina General Assembly] is required in order to establish a new office or to abolish an existing office." N.C. Gen. Stat. § 7A-498.

13

probation supervision is the responsibility of a state agency - the North Carolina Department of Public Safety. N.C. Gen. Stat. § 15A-1342(a1).

### E. Contacts Between Jail Staff and the District Attorney's Office

Plaintiffs claim, "Before the preliminary injunction, jail staff regularly contacted district attorneys seeking to get individuals released because the charges were low-level or because of crowding or health concerns. (Ex. 26, Collected Emails from Sheriff's Office Staff; D.E. 107-27 p. 14). Plaintiffs are correct that jail staff regularly contacted district attorneys to "get individuals released." Sheriff Johnson and Detention Center staff are interested in releasing detainees from pre-trial detention, regardless of outcome (Young Affidavit ¶ 4, D.E. 104-1). For instance, Plaintiffs do not cite any emails where Detention Center staff demand guilty pleas before seeking release. Instead, the emails show Detention Center staff asking the district attorney's office to "re-consider some type of unsecured bond, etc." (D.E. 107-27, p. 6). These emails conclusively establish that Sheriff Johnson and Detention Center staff do not have the authority to release individuals on their own authority, even when faced with pressing needs. The emails do not support any unconstitutional official custom, policy, or practice of Sheriff Johnson.

### 3. The Plaintiffs Do Not Identify Any Unconstitutional Acts or Omissions of Sheriff Johnson

Municipal liability only exists as a result of "municipal custom, policy, or practice." Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Municipal policy may be found in officially adopted

14

statements or in formal or informal policy choices or decisions of authorized municipal officials.  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  "Official policy can be inferred from a municipality's omissions as well as from its acts." Wellington v. Daniels, 717 F.2d 932, 935-36 (4th Cir. 1983).  "Municipal liability may not be rested simply upon a failure to adopt policies that in retrospect can be seen to be a means by which particular unconstitutional conduct of its employees might have been averted." Milligan v. City of Newport News, 743 F.2d 227, 230 (4th Cir. 1984).  Instead, "municipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

The unconstitutional policy must be the "moving force" of the constitutional violation specifically charged in order to create municipal liability.  Milligan, 743 F.2d at 230.  In cases where a policy is not facially unconstitutional, "[p]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." Spell v. McDaniel, 824 F.2d 1380, 1388 (4th Cir.1987) (citations omitted).

Sheriff Johnson is the keeper of the Alamance County jail and is responsible for the conduct of its staff.  N.C. Gen. Stat. § 162-22; N.C. Gen. Stat. § 162-24.  Sheriff Johnson is not alleged to have directly conducted any unconstitutional acts himself.  See

15

D.E. 107, p. 2. Therefore, in order to hold Sheriff Johnson responsible for the acts of his Detention Center staff, the Plaintiffs must prove the existence of a municipal policy or custom which is the "moving force" of the alleged constitutional violation. Milligan, 743 F.2d at 230.

The core of Plaintiffs' case is the "Official Policies on Pretrial Release" created in 1995 ("1995 Policy"). D.E. 107-2. The 1995 Policy applies to the judicial officials in Judicial District 15A. Id. North Carolina sheriffs, such as Sheriff Johnson, are local government officials - not state judicial officials. See Part 2.A, supra. The 1995 Policy does not apply to Sheriff Johnson because Sheriff Johnson is not a judicial official in Judicial District 15A. Id.; N.C. Gen. Stat. § 15A-532. Therefore, while the 1995 Policy may be a judicial "policy having the force of law", it is not automatically Sheriff Johnson's official policy. Plaintiffs have produced no evidence that the 1995 Policy was officially or unofficially adopted by Sheriff Johnson. Thus, the 1995 Policy cannot serve as the basis for municipal liability against Sheriff Johnson.

In fact, Plaintiffs fail to identify any official custom, policy, or practice of Sheriff Johnson which can serve as the basis for municipal liability. Plaintiffs only identify one express policy of Sheriff Johnson. See D.E. 107-7. Sheriff Johnson has stated that his official custom and policy is to follow N.C. Gen. Stat. § 15A-521 and accept the Conditions of Release and Release Order form (AOC-CR-200), as drafted by the N.C. Administrative Office of the Courts. D.E. 107-4, p. 63 ll. 5-14; D.E. 107-3, Johnson Resp. to RFA 3, D.E. 107-3; D.E. 104-1 ¶ 5. Plaintiffs do not allege or provide any evidence that G.S. § 15A-521 and the corresponding AOC-CR-200 form is

16

unconstitutional either as written or as applied by Sheriff Johnson. Sheriff Johnson has no alternative but to follow North Carolina statutes. N.C. Gen. Stat. § 162-14. Thus, Sheriff Johnson's policy of accepting the standard AOC-CR-200 form cannot create liability because "municipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." City of Canton, 489 U.S. at 389.

Plaintiffs are quite clear that the "moving force" behind the constitutional violations is alleged deficiencies in the bail hearings conducted by the magistrates or other judicial officials, which in turn led to the issuance of allegedly defective commitment orders. See D.E. 107, p. 33. "Municipal liability may not be rested simply upon a failure to adopt policies that in retrospect can be seen to be a means by which particular unconstitutional conduct of its employees might have been averted." Milligan, 743 F.2d at 230. Plaintiffs must prove that Sheriff Johnson's policy of accepting the standard AOC-CR-200 form was the "proximate" cause of their injuries. Spell, 824 F.2d at 1388. Since Plaintiffs have not identified any unconstitutional policies or practices of Sheriff Johnson, they have also not identified how those policies are the proximate cause of their injuries. Id. Plaintiffs' wholesale failure to identify and prove unconstitutional policies or customs actually attributable to Sheriff Johnson is fatal to their claims against him.

## CONCLUSION

Based upon the foregoing law and argument, Plaintiffs' Motion for Summary Judgment against Defendant Terry S. Johnson, in his official capacity as Sheriff of Alamance County, should be **DENIED**.

Respectfully submitted.

This the 30th day of August, 2022.

/s/William L. Hill
William L. Hill (NCSB #21095)
*Attorney for Defendant Johnson*

**FRAZIER, HILL & FURY, R.L.L.P.**
Post Office Drawer 1559
Greensboro, North Carolina 27402
Telephone:   (336) 378-9411
Facsimile:    (336) 274-7358
whill@frazierlawnc.com

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing document complies with the type-volume limitations of L.R. 7.3(d)(1) and (2) and contains 4,565 words, excluding those portions exempted by the rule.

This the 30th day of August, 2022.

/s/William L. Hill
William L. Hill (NCSB #21095)

19

Case 1:19-cv-01126-TDS-LPA   Document 110   Filed 08/30/22   Page 19 of 20

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this **BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** was duly served upon all parties hereto in accordance with the provisions of Rule 5 of the Federal Rules of Civil Procedure through the CM/ECF system for the Middle District of North Carolina as follows:

<u>  X  </u>  Notice will be electronically delivered to the following parties:

| | |
|---|---|
| Ann Capps Webb<br>awebb@acluofnc.org | Brandon Buskey<br>bbuskey@aclu.org |
| Twyla Carter<br>tcarter@aclu.org | Daniel K. Siegel<br>dsiegel@acluofnc.org |
| Joseph Finarelli<br>jfinarelli@ncdoj.gov | Katherine Hubbard<br>Katherine@civilrightscorps.org |
| Trisha Trigilio<br>trishat@aclu.org | Jeffrey D. Stein<br>jeff@civilrightscorps.org |
| Carson White<br>carson@civilrightscorps.org | |

<u>  X  </u>  Depositing a copy hereof, postage prepaid, in the United States Mail, addressed to said party as follows:

> Eric Halperin
> Civil Rights Corps
> 1601 Connecticut Ave. NW
> Suite 800
> Washington, DC 20009

This the 30th day of August, 2022.

/s/ William L. Hill
William L. Hill (NCSB #21095)
*Attorney for Defendant Johnson*

20