IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KATHERINE GUILL, on behalf of herself and others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| KATHERYN W. OVERBY, in her official capacity as Chief District Court Judge,[1] | ) ) ) ) |
| BRENDA BROWN, KELLY COUNCILMAN, DAVID CRABBE, DEMETRIUS-JEFFERY EDWARDS, BERTRAM HEATHCOTE, WENDY HUNTER, AMELIA KNAUFF, BOBBIE NANCE, HELENA RODGERS, KIMESHA THORPE, JOHN WATTERSON, SUSAN WORTINGER, in their official capacity as magistrates of the Alamance County District Court, | ) ) ) ) ) ) ) ) ) ) ) |
| D. THOMAS LAMBETH, JR., in his official capacity as Senior Resident Superior Court Judge, | ) ) ) ) |
| and, | ) ) |
| TERRY S. JOHNSON, in his official capacity as Alamance County Sheriff, | ) ) ) ) |
| Defendants. | ) |

1:19cv1126

**ORDER**

---

[1] The court granted Defendant Bradley R. Allen, Sr.'s motion to substitute Judge Kathryn W. Overby as Defendant as she succeeded him upon her appointment as Chief District Court Judge of Alamance County effective December 18, 2023. (Text Order dated Dec. 28, 2023.)

This case involves challenges to Alamance County's pretrial practices for determining bail for certain offenses. Before the court is Plaintiffs' motion for reconsideration of this court's memorandum opinion and order that granted in part and denied in part the parties' cross motions for summary judgment. (Doc. 157.)[2] Defendants filed responses in opposition (Docs. 159, 160), and Plaintiffs filed a reply (Doc. 161).

Plaintiffs ask the court to reconsider its decision to deny their motion for summary judgment on their claims seeking a declaration of a right to counsel under the Fourteenth and Sixth Amendments at first appearances conducted in Alamance County.[3] Plaintiffs contend that because the court found the Sixth Amendment claim was not moot – as the county's provision of counsel at those hearings was "subject to possible defunding" (Doc. 155 at 65) – "the court should analyze the constitutionality of the practice challenged at the time of filing" of the complaint for their claims as to both the Fourteenth Amendment and Sixth Amendment (Doc. 158 at 2). In other words, Plaintiffs argue that the court's failure to rule on its claim under the terms of the 1995 Bond Policy

---

[2] Plaintiffs filed a motion identical to the current motion two days prior (see Doc. 156), but it appears that docket entry 157 is intended to be the operative motion.

[3] Although Plaintiffs do not explicitly say so, their citation to pages 30-31 of the complaint suggests they are referring to Count III (alleging Fourteenth Amendment due process violation) and Count IV (alleging Sixth Amendment right-to-counsel violation). (See Doc. 158 at 1.)

2

pleaded in their complaint, despite the county's abandonment of that policy in the wake of its adoption of wholly new procedures in July 2020 (the "2020 Bond Policy"), was legal error. Plaintiffs suggest that correction of this error "may avoid trial altogether by facilitating settlement." (Id. at 6.)

The Judicial Defendants respond that the court properly held that Plaintiffs' as-applied challenge requires development of the record on the county's practices at first appearances under both the prior 1995 bond policy and the 2020 Bond Policy. (Doc. 159 at 2-4.) Defendant Sheriff Terry Johnson argues that Plaintiffs have failed to demonstrate any error of law and reiterates that he is merely statutorily obliged to carry out the detention orders of the Alamance County courts. (Doc. 160 at 4.)

Any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The court's September 21, 2023 memorandum opinion and order (Doc. 155) is an interlocutory order which can be reviewed by this court, "on motion or sua sponte, at any time prior to the entry of a final judgment." Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1472 (4th Cir. 1991); see Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003). Under Rule 54(b), the "district court retains the power to

3

reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n, 326 F.3d at 514-15.

A court may revise an interlocutory order under Rule 54(b) in three circumstances: "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Am. Canoe Ass'n, 326 F.3d at 515) (internal quotations and alterations omitted); see U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC, 899 F.3d 236 (4th Cir 2018). However, when assessing a Rule 54(b) motion for reconsideration, these standards are not applied with the same strictness as when they are used under Rule 59(e). Am. Canoe Ass'n, 326 F.3d at 514-15. The Rule 54(b) standard departs from the Rule 59(e) standard "by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." U.S. Tobacco Coop. Inc., 899 F.3d at 257 (quoting Carlson, 856 F.3d at 325). "Although Rule 54(b) motions for reconsideration are held to a less stringent standard than motions under Rule 59(e), such motions 'should not be used to rehash arguments the court has already considered' or 'to raise new arguments or evidence that could have been raised previously.'" Hatch v. Demayo, No. 1:16cv925, 2018 WL 6003548, at *1 (M.D.N.C. Nov. 15,

4

2018) (quoting South Carolina v. United States, 232 F. Supp. 3d 785, 793 (D.S.C. 2017)). In exercising its discretion, the court's authority to reconsider interlocutory orders "may be tempered at times by concerns of finality and judicial economy," but "[t]he ultimate responsibility of the federal courts . . . is to reach the correct judgment under law." Am. Canoe Ass'n, 326 F.3d at 515.

As to the procedural due process Fourteenth Amendment challenge raised in Count III, the court held that the claim was moot because the county adopted the 2020 Bond Policy in July 2020 and had been implementing it continuously ever since. (Doc. 155 at 64 & n. 15.) The 2020 Bond Policy expressly calls for the appointment of counsel for first appearances. Thus, as a matter of due process with regard to the procedures, the new policy provided for the very relief Plaintiffs sought, and there is no legitimate basis to conclude that the county would revise that portion of the policy. (See id. at 53-64.) Any funding insecurity does not undermine the definiteness of the procedure provided, only the substantive provision of counsel, which implicates only the Sixth Amendment right to counsel claim and not the Fourteenth Amendment substantive due process claim.

As to Plaintiffs' claim seeking a declaration that they have a Sixth Amendment right to counsel at first appearances, the court denied the parties' cross motions for summary judgment. In doing

5

so, the court was not persuaded that the record was sufficiently developed as to how bail determinations were conducted at first appearances to warrant a determination that the county's procedures were conducted in a fashion that violates the Constitution. (Id. at 85-86 (noting that "[i]f contract counsel are not available, the record is not clear that the bail determination at first appearances . . . is conducted in a fashion that violates the Constitution").) The court likewise denied the Judicial Defendants' Sixth Amendment cross motion for summary judgment on the ground that the record was similarly undeveloped as to how the bail inquiries at first appearances are conducted under the 2020 Bond Policy. (Id. at 86-87.)

The factual record is critical, as the determination whether a pretrial judicial proceeding implicates the Constitution is a fact-specific inquiry. Gerstein v. Pugh, 123-24 (1975) (recognizing, in a Fourth Amendment challenge, that "state systems of criminal procedure vary widely," that "[t]here is no single preferred pretrial procedure," and that whether procedures pass constitutional muster may depend on "only minor adjustment[s]"). With respect to the bond policies, then, Plaintiffs' charges of error are misplaced. The record on the 2020 Bond Policy is pertinent considering the court's holding that the policy avoids the voluntary cessation exception, and even if it did not, the record would still be insufficient as to the 1995 Policy to warrant

6

any grant of summary judgment. The court therefore discerns no error of law that would justify reconsideration on this record.

That being said, Plaintiffs' motion for reconsideration has prompted a more pressing practical problem. Plaintiffs' motion is premised in large part the assumption that 2020 Bond Policy's provision of contract counsel for first appearances is not guaranteed due to funding contingencies. (Doc. 158 at 5.) As the court noted, there has been no indication during the pendency of this litigation that such funding would in fact be exhausted. But more importantly, all stakeholders have advocated consistently for the creation of a public defender district in Alamance County, which would certainly vitiate many funding concerns and likely moot any right-to-counsel claim at first appearances. (See Doc. 155 at 64 n.15.) Although Plaintiffs' brief failed to mention it, the Judicial Defendants' brief reveals that the parties' efforts have been successful; on October 3, 2023, the North Carolina General Assembly established a public defender district in Alamance County, effective January 1, 2024, a mere four days away. (Doc. 159 at 5 (citing 2023 N.C. Sess. Laws 134, § 17.1(a) (amending N.C. Gen. Stat. § 7A-498.7(a)).) By all appearances, Plaintiffs will have obtained the relief they requested for first appearances: the provision of counsel. (Doc. 158 at 2.)

Yet, Plaintiffs remain unsatisfied. In reply, they argue that "there is no indication that funding for first-appearance

7

counsel will continue once the preliminary injunction expires," that it is "entirely unclear when the Alamance County public defender's office will be operational," and that "once it is," it remains unclear "whether it will provide first-appearance counsel without an order from this Court." (Doc. 161 at 5.) Plaintiffs' claim, on this record, that "the same practice challenged in Plaintiffs' complaint – lack of counsel at first appearance – will likely persist" (id.) is unpersuasive, at best.[4] Indeed, at oral argument, Plaintiffs' counsel contrasted the policies of other metropolitan counties, such as Mecklenburg, with Alamance County's policies because those other districts had a public defender's office that provided counsel while Alamance County did not.

While cross motions for summary judgment have been denied, the recent development of the creation of a public defender office in Alamance County would seem to grant Plaintiffs nearly all - if not literally all - of the practical relief they have sought in this case. In fact, all subsequent developments in this case, rather than suggesting any backsliding, as Plaintiffs fear, have bent toward providing the constitutional bail reforms Plaintiffs seek. On this record, the court is not inclined to reverse its

---

[4] Plaintiffs continue to argue that the Defendants' provision of contract counsel was pursuant to the court's preliminary injunction order. (Doc. 161 at 6.) What Plaintiffs overlook is the fact that the injunction was entered into by consent; that it was entered into before the formal implementation of the 2020 Bond Policy, which was being finalized; and that the provision of counsel was made a component of the 2020 Bond Policy and has been in place since July 2020.

8

decision to consider entering a declaration of rights under an abandoned policy simply as a hedge against an unlikely reversion. Consequently, Plaintiffs' motion for reconsideration is denied.

    SO ORDERED.

                                      /s/    Thomas D. Schroeder
                                      United States District Judge

December 28, 2023